## Case No. 8,344.

### LIGHTNER v. BROOKS.

[2 Cliff. 287.] [1]

Circuit Court, D. Massachusetts. May Term, 1864.

TRESPASS—PARTIES DEFENDANT—JOINT AND SEVERAL LIABILITY—INDEPENDENT CONTRACTOR.

1. A railroad corporation made a contract with a manufacturer for the building of certain cars, to contain, among other things, a certain patented improvement of a third party. The contract was, in behalf of the corporation, signed by the chairman of the directors, as chairman. The contract-

1 [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

or had no license to use the patented improvement. Suit by the patentee against the said chairman. *Held*, the defendant's contract could not be construed as authorizing or contemplating any trespass upon the rights of the patentee, and that he was not liable.

2. Both the master who commands the doing, and the servant who commits the act of trespass, may be made responsible as principals, and may be sued jointly or severally.

[Cited in Estes v. Worthington, 30 Fed. 466.]

3. But in this case, even if the contract be regarded as that of the defendant, it does not amount to a command, direction, or authority to the contractor to use the patentee's invention without license, neither is there any reason to infer that there was any such relation as that of master and servant, either between the contractor and the defendant or between the contractor and the railroad company.

[Cited in Lightner v. Kimball, Case No. 8,345.]

4. Whether the rule would be different if the materials had been furnished by the company, and the contractor had been at work in their shop, quaere.

5. Unless it be assumed that the defendant contracted that the builder of the cars should use the plaintiff's improvement without license, it cannot be admitted that the contract furnishes any ground to infer, that any violation of the rights of the plaintiff were intended by a stipulation for the delivery of the cars to the railroad company.

Trespass on the case [by John Lightner against J. W. Brooks] for an alleged infringement of a patent [No. 5,936]. Facts agreed. The defendant was a stockholder in the Hannibal and Saint Joseph Railroad Company, which is a corporation created by the laws of the state of Missouri, and was also chairman of the board of directors of said company. The meetings of the directors were usually held in Boston, in this commonwealth. In November, 1858, the corporation made an agreement with one Osgood Bradley to construct for them twenty-six passenger cars. Among other things, the contract provided that the trucks were to be furnished with safety-beams, double-connection brakes, swing-motion, and Lightner boxes. The agreed statement also showed that the contract was negotiated and executed in behalf of the corporation, by the defendant, as chairman of the board of directors, and that he transacted the business pursuant to a vote of the directors authorizing his predecessor in office to contract for such amount and kind of rolling stock as he might deem expedient. The contract was made in behalf of the company by J. W. Brooks, chairman. The cars were built by the contractor as agreed, and contained what are called Lightner boxes, which it was admitted were the same, or substantially the same, as those described in the plaintiff's patent. All the cars were completed within the time specified in the declaration, delivered to the railroad company pursuant to the terms of the contract, and up to the time of the commencement of the suit had been used by the corporation as part of their rolling stock. It was agreed, if the court was of opinion that the defendant was

not liable, then a verdict was to be rendered in his favor; otherwise, the agreed statement was to be discharged and the case to stand for trial.

Causten Browne, for plaintiff.

The facts show a valid patent. Infringement by the making of certain cars for, and their use upon, the Hannibal and Saint Joseph Railroad. The cars were made and put on the road by the direction of the defendant, acting upon his own judgment and responsibility. These facts are understood by the plaintiff to bring the case directly within the terms of a late decision of the United States circuit court for the Second circuit. Goodyear v. Phelps [Case No. 5,581], November 28, 1853, Nelson, J.; Poppenhusen v. Falke [Id. 11,280], 1862, Shipman, J. It is claimed that defendant is liable, both for making and using the infringing cars. As to making, it was done by one Bradley, but to order, and his employer is liable as well as himself. Bryce v. Dorr [Id. 2,070]. Brooks and Bradley might have been joined. Buck v. Cobb [Id. 2,079]; Dodge v. Bassett [unreported], Sprague, J. 1861. And if so either may be sued separately. But the defendant was the employer, who, in the exercise of his own discretionary power, procured these cars to be made. So with the use of the cars on the Hannibal and Saint Joseph Railroad. They were put upon the road by the direction of the defendant. They were continued in use by his direction or that of the board of directors; and if the board of directors would be liable as users, the defendant is liable as user, as one of that unincorporated body. The defendant seeks to defend himself both as to the making and using, by showing that he has done so by authority of the company. But the unlicensed manufacture and use are mere torts. Not nonfeasances or misfeasances for which a principal alone is answerable; but malfeasances which no agency can protect, and for which the agent is directly and personally answerable. Story, Ag. §§ 311, 312, and cases; Perkins v. Smith, 1 Wils. 328; Stephens v. Elwall, 4 Maule & S. 259. These cases are selected because the acts for which the agents are personally charged were simple torts without fraud, &c. Cases bearing specially upon the defendant's case as a director of the company, are Salmon v. Richardson, 30 Conn. 360; 1 Chit. Pl. 81, 83; Bell v. Josselyn, 3 Gray, 311; 2 Greenl. Ev. § 68; Com. v. Ohio & P. R. Co., 1 Grant, Cas. 329; Calhoun v. Richardson, 30 Conn. 210. The directors, by their agent, Brooks, put these cars in use upon the road; they had the right to put whatever cars they thought proper (for they gave Brooks that power) in use on the road. They had a right to substitute others, if they found those already there improperly there. It is a fair inference from the agreed facts that the directors knew the cars had gone upon the road and contained Lightner boxes. They then directed their continued use with Lightner boxes, and are users themselves. If so they are liable jointly and severally.

Sidney Bartlett, for defendant.

As a general principle an agent of a corporation, acting in its behalf, who authorizes the commission of a tort, for its benefit (whether such agent be president, director, superintendent, or stockholder) is personally responsible to the injured party. The fact that he has or has not an interest, or does or does not derive a benefit from the act, has no influence upon the question of his liability. That liability results from his knowingly participating in an act which is a tort. This contract is not an authority or direction to affix a patented article to the cars without license of the patentee. The legal and just implication is not, that it is intended to violate the patent of the plaintiff, but that the manufacturer charges in his price and will obtain, or has, the required license. If it could have been shown that defendant, after the delivery of the cars to the corporation, learned and knew that Bradley had affixed Lightner boxes to the cars without license, and that they had since been used by the corporation, and that defendant had had authority to interfere and direct the general agent to cease using them, still defendant could not be charged with a tort. Mere inaction, when one has power to interfere and prevent a trespass, does not make one a trespasser. His failure to interfere might make him liable to his employers for neglect of duty. In such case plaintiff's remedy is against the manufacturer or the corporation. Story, Ag. 370. There is nothing to show that defendant ever knew that Bradley had, without license, affixed plaintiff's boxes to the cars, and he must consequently be deemed ignorant of any violation of plaintiff's patent. Moreover, in the agreed statement of facts there is nothing to show that defendant had in himself any authority in any manner to interfere to prevent the use of the cars; and there is nothing in the case or in the law, to authorize any single director, though he be chairman of the board, and a stockholder, to govern the proceedings of the superintendent and general agent.

CLIFFORD, Circuit Justice. The argument for the plaintiff is that the defendant is liable, because it is insisted, that whenever an agent of a corporation assumes to authorize, or directs the commission of a trespass, the agent assuming to confer the authority, or who gives the directions, is himself personally liable to the injured party, although he did not directly participate in the commission of the wrongful act. Undoubtedly all persons commanding, procuring, aiding, or assisting in the commission of a trespass are principals in the transaction, and stand responsible to answer in

damages to the injured party. Both the master who commands the doing, and the servant who does the act of trespass, may be made responsible as principals, and may be sued jointly or severally for damages, as the injured party may elect. Herring v. Hoppock, 15 N. Y. 413; Castle v. Bullard, 23 How. [64 U. S.] 185; Baker v. Lovett, 6 Mass. 80; Smith v. Rines [Case No. 13,100]; Murray v. Lovejoy [Id. 9,963]. But the question in this case is whether the agreed statement shows that the defendant ever commanded, procured, or in any manner authorized or directed the wrongful act which is the subject of complaint.

He denies that the terms of the contract, even if it be regarded as his contract, which it is not, amounts to any command, direction, or authority to make or use the improvement of the plaintiff without license, and consequently insists that none of the principles suggested, which he admits are correct, have any application whatever to the facts of the case. Referring to the agreed statement, it will be seen that all the defendant did, whether as agent or otherwise, was to make the contract for the twenty-six cars, which when completed, were to be delivered to the company for their use. The terms of the contract were that the cars, when completed and ready to be delivered, should contain the improvement in question, but he neither commanded, directed, or stipulated that the contractor should infringe the patent of the plaintiff, or that he should make or use his invention unlawfully or without license. Patentees have the exclusive right to make and use their inventions, and vend the same to others to be used, for the period of time specified in their patents. The exclusive right of vending the improvement to others to be used is as much a part of the monopoly, as the exclusive right to make and use the same, and in respect to improvements like that of the plaintiff, much the greater portion of the value of the monopoly secured by the patent consists in the right of sale, and transfer of that right, by license or assignment. The assignees and licensees accordingly become the lawful manufacturers of the patented improvement, and common experience shows that they are as frequently, if not much oftener, the lawful vendors of the improvement than the patentee. When the defendant in this case contracted that the cars should contain the improvement of the plaintiff, he did not command or authorize the contractor to infringe the patent of the plaintiff, and there is not a word in the contract to indicate that the defendant contemplated any such infringement, or that he had any reason to believe that any infringement of the rights of the plaintiff would ensue, as a legitimate consequence of the contract. The person contracting in this case was not the servant of the defendant, and the agreed statement furnishes no ground to infer that there was any such relation as that of master and servant, either between the contractor and the defendant, or even between the contractor and the railroad company. On the contrary, the clear inference from the whole case is, that the contractor was in the exercise of an independent business, working in his own shop, furnishing his own materials, and selecting, employing, and paying his own workmen, wholly independent of the company or of the defendant. Whether the rule might or might not be different if the materials had been furnished by the company, and the contractor had been at work in their shop, as their servant or mere employee, it is not necessary to determine, because there is not a fact or circumstance in the case to justify or support any such theory. The case shows that the contractor was a carbuilder, and that the defendant, as the agent of the company for that purpose, contracted with him to construct twenty-six cars for the company, according to certain written specifications, which made a part of the contract. The specifications, as furnished, enumerated the improvement of the plaintiff, and the contractor agreed that the cars when completed and offered for delivery to the company, should contain that improvement. He built the cars containing that improvement, and within the time specified in the contract delivered the same to the company, and the same have ever since been in their use as part of their rolling stock. Taken as stated, it is clear that no reasonable construction of the contract can authorize the conclusion, either that the defendant committed a trespass, or commanded or directed one to be committed by the contractor.

Where parties contract for implements, machines, or structures to contain any of the modern patented improvements, without any knowledge that the contractor is an infringer, or intends to use the improvement without authority, it is not the just and legal implication from the contract that the party ordering the article contemplates that the contractor will violate the rights of the patentee, or that he thereby commands or directs an infringement. Such contracts are now of daily occurrence, and unless there is some proof of concert, or something in the terms of the contract to indicate a contrary intent, the presumption must be that the person ordering the article either supposed that the contractor had the right to use the improvement, or, as part of the price to be paid by the purchaser of the article ordered, would procure the right of use from some person authorized to grant it for that purpose. The opposite theory cannot be supported without imputing fraud to the party ordering the article, which is never to be presumed without proof, and therefore, as there is no proof of the imputation, the theory cannot be sustained. Granting

the rule of law to be so, still, it is insisted by the plaintiff that the defendant is nevertheless liable, because it appears that the cars so contracted for by him were to be delivered, and were delivered to the railroad company, and have ever since been in use by the corporation. The proposition of fact deduced from that statement is, that the cars were put upon the railroad by the direction of the defendant, and that they have ever since been continued in use by his direction. Were the facts so, it may be that the consequences supposed would follow, but the difficulty with the proposition is that the theory of fact assumed is not sustained by the agreed statement. The contractor delivered the cars to the railroad company, pursuant to the terms of the contract. The defendant gave no directions upon the subject, and the cars have ever since been continued in use by the company, because they hold the property in them under the purchase. Unless it be assumed that the defendant contracted that the builder of the cars should use the improvement of the plaintiff unlawfully and without license, it cannot be admitted that the contract furnishes any ground to presume that he contemplated any such violation of the rights of the plaintiff, in stipulating for the delivery of the cars to the railroad company. The error in the latter proposition is as apparent as in the former, and in both it is too obvious to require further elucidation. The proofs show that the defendant was the agent of the railroad company for the purpose of contracting for such an amount and kind of rolling stock as he might deem expedient; but there is no proof whatever in the case that he was the general agent of the company. The general agent and superintendent of the company resided at Hannibal, in the state of Missouri, and the agreed statement shows, that he contracted in behalf of the corporation for other cars which contained the improvement of the plaintiff, and that the same were used by the corporation. The independent power of the defendant upon that subject was exhausted when he had made the contract for the twenty-six cars, and stipulated for their delivery within the time specified. The delivery was to be made by the contractor to the railroad company, and it was not in the power of the defendant to rescind the contract, or countermand the delivery of the cars. When delivered, the property of the cars vested in the company; and having acquired both the property and the possession of the cars, it was the right of the company, and of their general agent and superintendent, to determine the question as to their use.

The corporation may be liable to the plaintiff for the unlawful use of the improvement, and so may their general agent and superintendent, if he has used the cars, or directed their use; but it will be in season to determine those questions, when they arise and come before the court.

In view of the whole case, I am of the opinion that the defendant, under the agreed statement, is not liable in this action, and, according to the agreement of the parties, he is entitled to a verdict in his favor, and to judgment.

[The same patent was involved in Case No. 8,345.]