## BADER v. MILLS & BAKER COMPANY
### (No. 995; Decided December 22, 1921; 201 Pac. 1012)

APPEAL AND ERROR—RECORD ON APPEAL—TRIAL—MOTION FOR NON-
SUIT—PRINCIPAL AND AGENT—TRESPASS—PLEADING—DAMAGES—
MITIGATION OF DAMAGES AS DEFENSE—WATER AND WATER COURSES
—INSTRUCTIONS—REQUESTED INSTRUCTIONS IGNORING EVIDENCE
PROPERLY REFUSED—ERROR INVITED—CROP DESTRUCTION—POSSES-
SION.

1. Rulings on motions as to pleadings and exceptions reserved
thereto must be shown by journal entries in the record
in order to be considered as assignments of error on ap-
peal. A mere statement by the clerk in a certificate of
the record that a motion was overruled is insufficient
under Comp. Stats. 1920, Sec. 6406.

2. A case can only be dismissed in accordance with the pro-
visions of Comp. Stats. 1920, Sec. 5879, hence the trial
court has no authority to order a peremptory nonsuit
against the plaintiff. A motion for nonsuit cannot take
the place of a motion to direct the verdict.

3. An agent is generally not liable to a third person for fail-
ure to perform a duty, and in such case is responsible,
generally, only to his principal, but where he commits a
positive wrong, he cannot shield himself simply because
he acts as agent for another, as no one can authorize him
to commit a wrong.

4. While a plaintiff, suing for damages, cannot recover for
losses which might have been prevented by reasonable
efforts on his part, he is not required to plead his inability
to reduce the damages. The burden of proof on this sub-
ject rests upon defendant.

5. That plaintiff did not take steps to repair injury to the
banks of his irrigation ditch done by defendant and so
prevent loss of crops, is not a complete defense but goes
only to a reduction of damages.

6. Only reasonable efforts and expenditures are required un-
der the rules as to mitigating damages; the test being
what would an ordinarily prudent man do under like
circumstances?

7. In an action for damages resulting from injury to an irri-
gation ditch where the evidence tended to show that the
repair of the ditch to save the water for the irrigating
season could have been made only during one day; that
plaintiff did not have the teams or help to make the re-

pairs during that day; that defendant did have means to make such repairs; held under the evidence a question for the jury under proper instructions.

8. If but for defendant's wrongful weakening of the bank of plaintiff's irrigation ditch, it would not have been broken by the succeeding rain, their acts are the proximate cause rendering them liable, and the case is removed from the operation of the rules applicable to the acts of God.

9. Instructions given in an action for damages that injuries caused by the act of God or the forces of nature and without the intervention of human agencies, do not constitute grounds for recovery even if lacking somewhat in clearness of statement, but in language as clear as that of instructions requested by defendant, do not constitute a proper ground of complaint on appeal.

10. Where plaintiff, whose ditch was weakened by defendants taking sand from the banks thereof, resulting in succeeding rains breaking them, concededly gave defendants permission to go on his land and take sand therefrom, but the issue on which evidence was introduced by both sides was whether taking it from the banks was not only without his consent, but against his protest, the words "unlawfully" and "wrongfully" in the instruction, that if the jury find that defendants wrongfully and unlawfully entered on plaintiff's land and injured the ditch, are to be considered as referring to such issue.

11. Requested instruction that damages to crops could not be recovered on account of injury to irrigation ditch, because, for causes for which defendants were not responsible, water could not have been obtained at the headgate, held properly refused, as ignoring evidence that it could have been obtained lower down from the river near which the ditch ran.

12. Where an instruction given closely resembles an instruction requested but refused, error if any contained therein is invited and not reversable.

13. In case of partial destruction of growing crops, an instruction that the measure of damages is the difference between the market value of the crop before and after the injury at the time and place thereof is clearer and preferable to one that, the measure of damages for injury to or destructions of growing crops is the value thereof in the condition they were at the time and place of the injury or destruction.

14. Use of "could" in instruction as to damage for partial destruction of growing crop that in determining the market value of the crop destroyed the jury should find the difference between the value of the crop which plaintiff "would or could" have produced had he not been deprived of water by defendant, and the value of what he did produce, deducting necessary cost of production, harvesting and marketing, while objectionable, held harmless in view of the evidence, including reasonable certainty that the crop would have matured had it not been injured, and the amount of the verdict.

15. Though the land from which defendants took sand, injuring the banks of plaintiff's irrigation ditch, belonged to the state, plaintiff's possession of his ditch was enough, as against defendants, mere trespassers, to have the banks unmolested.

Appeal from the District Court of Natrona County; Hon. Charles E. Winter, Judge.

Action by Charles Bader against Mills and Baker Company and another for damages in trespass for an alleged interference and injury to plaintiff's irrigation ditch and dike resulting in a loss of water supply. There was a judgment for plaintiff and defendant appeals.

*Floyd E. Pendell*, for appellants.

In an action for damages to growing crops the nature of plaintiff's title should be shown and the trial court erred in overruling appellant's motion, for a more specific statement. The trial court erred in overruling appellant's motion to strike portions of the petition. Mills was acting under direction of the State Engineer and not under orders from appellant in removing the gravel in question which was taken from lands belonging to the State of Wyoming. The evidence showed that the damage if any, was due to highwater in the river in 1918. The trial court should have sustained appellant's motion for nonsuit, (17 C. J. 767.) It was the duty of respondent to have saved himself from damage as far as possible, (Hall v. Pain, 224 Mass. 62; Brown v. Weir, 88 N. Y. S. 479.) Respondent's

ditch was in such bad repair above the points where appellants were operating as to render it useless for irrigation during the years 1917 and 1918, which disrepair was caused by high water and floods for which appellant was not responsible. The Court erred in refusing appellant's requested instruction that the gravel was being removed under orders from the State Highway Commission; the evidence supported the instruction requested. (38 Cyc. 470; Burdick v. Hunt, 43 Am. Dec. 289.) The Court erred in refusing appellant's requested instruction on the measure of damages. (Roberts v. Lehl, 149 Pac. 851; Cheda v. Bodkin, 158 Pac. 1025; Canal Co. v. Bennet, 156 Pac. 604; Woodland v. Irrig. Co., 146 Pac. 1106.)

The third instruction requested and refused was with reference to the damaged condition of respondent's ditch above the dam and available water supply. Appellant was entitled to have this phase of the case considered by the jury. The Court erred in refusing appellant's requested instruction as to the elements necessary to prove the support of respondent's case and also containing the defense of an act of God. The Court erred in refusing to direct a verdict in favor of defendant in view of the state of the evidence at the close of the case. The giving of the third instruction was prejudicial to appellant and was unsupported by the evidence. Instruction No. 6 was prejudicial to appellant in that it excluded the proposition of the ditch being broken by the act of God without considering the acts of defendants, in other words, if the flood was of such violence as to break the ditch, irrespective of any act of appellant, respondent should recover. The Court erred in holding respondent responsible for acts done under direction of the State Highway Commission.

*Hagens & Murane,* for respondent.

Appellant's motion for a more specific statement called for the pleading of evidence and was properly overruled.

(Bliss, C. P. 140.)   The motion to strike was properly overruled.   (Bliss C. P. 206.)   The evidence showed that Blair was working under direction of Mills & Baker Company and the motion for nonsuit is not well taken. (Mau v. Stoner, 15 Wyo. 135; 35 Cyc. 490.)   The evidence clearly established the fact that the interference and damage to respondent's ditch and dam was caused by appellants in that the excavations made exposed the ditch and dam to destruction by high water, irrespective of whether Mills was agent of the Mills & Baker Company he was liable personally for his wrongful acts.   It was clearly shown that it would have been impossible for respondent to have prevented the damage.   The instruction given by the court contained correct statements of law applicable to the case.   For example, instructions eight and nine, (see 38 Cyc. 483-487.)   No. 4 on measure of damage, (Hatch v. Black, 25 Wyo. 121; Texas Co. v. Laconor, 122 S. W. 424; Co. v. Hartman, 38 Pac. 62; Roberts v. Lehl, 149 Pac. 851; Sutherland, 1023.)

Blume, Justice.

The plaintiff in this case, respondent herein, commenced an action against the defendants' appellants herein, for damages in trespass, claiming that defendant took gravel from or near the natural banks of plaintiff's irrigating ditch, thereby weakening such banks; that defendant further, by driving across and in other ways weakened a dam or dike built by plaintiff which adjoined the foregoing natural bank and was used for the purpose of forcing water further down into plaintiff's irrigating ditch; that as a result of these acts the high water of the Platte river in June, 1918, washed away part of the natural bank mentioned, and in turn and as a result thereof, the dike or dam mentioned; that by reason thereof plaintiff was unable to irrigate his land and he raised only a partial crop; that most of his alfalfa died out, and he was compelled to repair his ditch.   At the close of plaintiff's evidence de-

fendants moved for a non-suit. At the close of the testimony they moved for a directed verdict. Both of these motions were overruled and the jury returned a verdict in favor of plaintiff for $2000. Judgment was entered on the verdict and the case is here on direct appeal.

1. The defendants made a motion in the court below to require the plaintiff to make his petition more definite and certain, and also a motion to strike certain parts of the petition. There are no journal entries in the record containing the ruling of the court thereon, or showing whether an exception was reserved to either ruling, as required by Section 6406 of the statutes. The clerk certifies, at the end and as a part of his certificate authenticating the record, that these motions were overruled, but such certificate cannot take the place of the entries themselves. Further, that certificate does not show any exception to the rulings. We cannot, accordingly, consider assignments of error numbers 1 and 2.

2. The motions for non-suit were properly overruled. Such motion cannot take the place of a motion to direct a verdict. The case of Mulhern v. Union Pacific Railroad Company, (2 Wyo. 465,) is decisive of the point. It fully discusses this subject, and holds that a case can only be dismissed in accordance with the provisions of the Code of Civil Procedure, which are embodied in what is now §5879 of the Statutes of 1920, and hence that the court has no authority to order a peremptory non-suit against the will of the plaintiff.

3. It is the theory of the appellants that defendant Mills, as agent for Mills & Baker Company, and the latter as agents for the State Highway Commission, are not responsible in trespass unless they intentionally, or with knowledge of the wrong, committed the tort. On this theory a motion was made in the court below for a directed verdict for defendant Mills. An instruction on this subject was also offered, but not given. The principles of law on this subject apply equally to both defendants and

we need not discuss separately the assignments of error having reference thereto. There is evidence in the case to warrant a finding that the corporation actually took away the gravel which weakened the ditch bank, and that the defendant Mills, as president of the corporation, was its managing agent in the work and fully understood what was done. The contention of appellants on this subject cannot be sustained. It is a fundamental rule of the law of tort, including trespass, that all who participate in the wrong are equally liable. (38 Cyc. 485, 1042.) An agent is, generally, not liable to a third person for failure to perform a duty, and in such case is responsible, generally, only to his principal. So, too, it has often been held that if he receives property from one whom he is entitled to regard as the owner and merely transports it to another, he is not liable; the reason being that possession of personal property is *prima facie* evidence of ownership and hence to receive it from the possessor and to deliver it according to order is not to be regarded as a tort. (Burdett v. Hunt, 25 Me. 419, 43 A. D. 289.) But where he commits a positive wrong, he cannot shield himself simply because he acts as agent for another, for no one can authorize him to commit a wrong. In Crane v. Onderdank, 67 Barb. (N. Y.) 47, 56, the court said:

"Although an agent, for nonfeasance and omissions of duty, is not liable except to his principal, the rule is otherwise when the act complained of is misfeasance. In all such cases he is personally responsible, whether he did the wrong intentionally, or ignorantly by the authority of his principal; for the principal could not confer on him any authority to commit a tort upon the rights or property of another."

In the case of Welch v. Stewart, 31 Mo. App. 376, the court said:

"In case of nonfeasance, an agent is liable only to his principal, but in cases of malfeasance or trespass, he is liable to the person injured, and cannot shield himself by

proving that he committed the trespass under a contract with someone else.''

In the case of Hazen v. Wight, 87 Me. 233, 32 Atl. 887, the court said:

''And surely, if Mrs. Wight had no authority to cut wood or timber upon the premises, she could confer none upon her servant. A stream can never rise higher than its fountain; and a servant as such can never have greater authority than his employer. And if Mrs. Wight was a trespasser in directing the wood and timber to be cut, clearly the defendant was also a trespasser in executing her command.''

In the case of Lightner v. Brooks, 2 Cliff. 287, Fed. Cas. No. 8344, the court said:

''Undoubtedly all persons commanding, procuring, aiding or assisting in the commission of a trespass are principals in the transaction and stand responsible to answer in damages to the injured party. But the master who commands the doing, and the servant who does the act of trespass, may be made responsible as principals, and may be sued jointly or severally for damages as the injured party may elect.''

Without quoting further from cases we refer to Reed v. Peck, 163 Mo. 333, 63 S. W. 734; Lane v. Cotton, 12 Mod. 472, 88 Engl. Rep. 1458; Marshall v. Eggleston, 82 Ill. App. 52; Walters v. Hamilton, 75 Mo. App. 237; Reber v. Telephone Co., (Mo. App.) 190 S. W. 612; cases collated in 50 L. R. A. 645; Burdick on Torts, 182, 183; Robinson v. Mining Co. 178 Mo. App. 531, 163 S. W. 885.

4. Counsel for defendants contend that under the evidence it appears that plaintiff could by a moderate expenditure of effort and money, not exceeding $350, have repaired the damage done, and that hence plaintiff should not recover anything for the loss of crops. Several assignments of error based on this subject may be considered together. It is true, as counsel state, that plaintiff cannot recover for any losses which might have been prevented

by reasonable efforts on his part. (17 C. J. 767.) But this is a matter in mitigation, and it was not the plaintiff's duty to plead his inability to reduce the damages. (8 R. C. 618; Indianapolis St. Ry. Co. v. Robinson, 157 Ind. 414, 61 N. E. 936.) And the burden of proof on this subject rested upon the defendant. (17 C. J. 1025.) In Costigan v. R. Co., 2 Denio 609, 43 A. D. 758, the court said in reference to this defense:

"But first of all the defense set-up should be proved by the one who sets it up. He seeks to be benefited by a particular matter of fact, and he should, therefore, prove the matter alleged by him. The rule requires him to prove an affirmative fact, whereas the opposite rule would call upon the plaintiff to prove a negative, and therefore the proof should come from the defendant. He is the wrongdoer, and presumptions between him and the person wronged, should be made in favor of the latter. For this reason therefore the onus must in all such cases be upon the defendant."

Where such defense is proven, it is not a complete defense, but would only reduce the damages. Belnap v. Widdison, 32 Ut. 246, 90 Pac. 303, and hence the instruction asked on this subject would not have been proper. Only reasonable efforts and expenditures are required under this rule. The test is, what would an ordinarily prudent man do under like circumstances? (17 C. J. 770.) There was evidence in this case tending to show that the repair of the ditch and dike, in order to save the water for the irrigating season of 1918, could have been made only during one day; that plaintiff did not have the teams or help in order to do this during that day, but that defendant did. Under this evidence, the question was, we think, one for the jury to decide. The court submitted it to them under proper instructions, and we think that this was right.

5. It was the theory of the plaintiff that the interference with the natural and artificial dike was the proximate

cause of the damage, setting in motion the force of the flood that came on June 18, 1918; the defendants' theory was that the flood was an act of God and therefore the proximate cause of the injury. It is the general rule that where the first cause sets the other in operation, it is the proximate cause. (The G. R. Booth, 171 U. S. 450; Dickinson v. Boyle, 17 Pick. 78, 28 A. D. 281; Cleveland Ry. Co. v. Carey, 33 Ind. App. 275, 71 N. E. 244; Derry v. Flitner, 118 Mass. 131; Scott v. Hunter, 46 Pa. 192.) Hence, when the effect, the cause of which is to be considered, is found to be in part the result of the participation of man, whether it be from active intervention or neglect, or failure to act, the whole occurrence is thereby humanized, as it were, and removed from the operation of the rules applicable to the acts of God. (1 C. J. 1175.) As was said in Amend v. R. Co., 91 Nebr. 1, 135 N. W. 235:

"It is pretty well settled that if a wrong or act of negligence is committed and that act contributes proximately to the injury, even though combined or in conjunction with the act of God, the wrong doer will be liable."

In Polack v. Pioche, 35 Cal. 416, 95 A. D. 115, the court said:

"Before an act can be considered the act of the elements, it must appear that no human agency intervened, for if it did, the elements cannot be regarded as the cause, but only as the means. Had the waters in question broken through the embankment of the natural reservoir in which they had accumulated without the agency of man, the loss would have fallen within the exception contained in defendant's covenant. The case shows, however, that they would not have broken through the embankments but for the help of man."

In the case of Dickinson v. Boyle, supra, the defendant dug into the bank of a river near a dam that had been built across the river, took away some gravel and undermined some trees. As a result thereof, a flood that came

about three weeks later, washed away plaintiff's soil. The defendant was held liable.

Not a great deal of contention, perhaps, is made as to these principles of law, but it is contended that the court should have pointed out to the jury that if the flood had been so overwhelming that the damages would have been caused without reference to the acts of the defendants, then that the latter should not be held liable. Apparently for that purpose, an instruction was asked that the defendants could not be held responsible for damages caused by rains, cloudbursts or high waters, nor by any cause other than the negligent acts of defendants. The court instructed the jury that if the damage was caused solely by the high water the defendants would not be held responsible. Again, in another instruction, the court told the jury that where an injury is caused by the act of God, such as lightning, earthquake, hurricane, cloudbursts, or other unusual calamity, the person receiving injury from such cause cannot recover damages by reason thereof, but rightly added, that such acts of nature must be the sole cause, not aided or brought about by human agency. We think that these instructions sufficiently conveyed to the jury the thought that if the damage would have been done by these forces of nature, even in the absence of the acts of defendants, then that they could not hold the latter responsible. In any event, while the thought is not, perhaps, as clearly stated as might be done, the language of the instructions given by the court is as clear as that offered by the defendants, and no ground for complaint, therefore, exists.

6. Counsel for appellants complain of the following instruction given by the court:

"If you find or believe from the evidence, that defendants' wrongfully and unlawfully entered upon the lands and premises in the possession or owned by plaintiff, and injured the irrigation ditch of plaintiff, then your verdict must be for the plaintiff."

Counsel object that the court thereby practically direct-
ed the jury to return a verdict for plaintiff, in face of
the fact that defendants claimed that the plaintiff had
given his consent to enter upon his premises and take the
gravel.   The plaintiff claimed that while he gave his
consent to take gravel, that consent was subject to the
qualification that his ditch should not be injured, and
that the main. damage to the ditch was done in the last
two days before the flood, over his protest and against
his objections.   To sustain these respective theories ev-
idence was introduced by the parties.   We think that
the words "unlawfully" and "wrongfully" should be con-
strued as having reference at least indirectly to the injury
to the ditch.  If the defendants unlawfully or wrongfully
entered plaintiff's ditch and the banks thereof—which
were part of the whole of his premises—and in so doing
injured the ditch, or if they unlawfully or wrongfully in-
jured the ditch, without reference to the entering, then
the plaintiff was entitled to at least nominal damages.
The court here made reference to unlawful and wrongful
acts; not to acts lawfully done with the consent of plain-
tiff, and no acts of the latter class were, therefore, thereby
excluded from the consideration of the jury.   We see no
error in the instruction.

7. Counsel for defendants contend that the ditch of
plaintiff was destroyed at a certain point of rocks, the
location of which we cannot determine from the evidence,
except that it is above the dam destroyed by the flood;
and they further contend that plaintiff could in no event
have obtained water through the ditch in the summer of
1918, and hence defendants should not be held responsible
for the value of the crops.  They offered the following
instruction which the court refused to give:

"The court instructs the jury that if you should find
from a fair preponderance of the evidence that the ditch
of the plaintiff was washed away by the high flood water
of the Platte river above the dam owned by the plaintiff,

so that water could not have been run through said ditch, even though available, then and in that event you are instructed that the plaintiff could recover no damage for his crops."

The difficulty with the instruction, as well as the argument of counsel on this point throughout, is the fact that there was evidence in the case that plaintiff was able to take water from the river not only at the headgate, but at various points along the course of the ditch, which ran at many points close to the river. The defendants are not in position to dispute the right of plaintiff to change the point of diversion. The witness Veitch testified that this water could have been taken out of the river at or near the so-called upper dam, which was below the point of rocks, just as well as at the headgate. Other evidence of similar effect appears in the record. Hence the condition of the ditch at the point of rocks could not make any difference whatever, and the instruction offered, in view of this state of the record would have been, therefore, misleading.

8. Defendants complain of the refusal to give an instruction asked, on the measure of damages, and of that given thereon. The instruction asked is as follows:

"The court instructs the jury that the measure of damages for the partial destruction of growing crops is the market price of the crops at the time of its destruction."

The instruction given, after stating that plaintiff would be entitled to the actual damages sustained, in case defendants damaged the crops of plaintiff, proceeds as follows:

"The measure of damages for the injury to or destruction of growing crops is the value of the crops in the condition they were in at the time and place of the injury or destruction."

The language quoted as given by the court is taken from Hatch Bros. Co. v. Black, 25 Wyo. 110, 121, 165, Pac. 518, which deals with a total destruction, while in the

case at bar there was only a partial destruction. This court had before it an instruction dealing with such partial destruction in Wyoming Central Irr. Co. v. Laporte, 26 Wyo. 249, 258, 182 Pac. 485, where, however, the instruction given in that case was neither approved nor disapproved. The quoted portion of the instruction here given closely follows the language of the instruction offered, and whatever error it contains is, therefore, invited error, for which we would not reverse the case. While the phraseology used by the court is at times found in authorities, still it, as well as the instruction offered, may be construed to mean that the whole value of the crop may be recovered though it is only partially destroyed, or where it is only "injured." A much better and clearer expression is that in case of partial destruction, the measure of damages is the difference between the market value of the crop before and after the injury at the time and place thereof. (17 C. J. 887, 888.)

We think perhaps, though counsel have not made it clear, that the main objection is to that portion of the instruction given which follows that above quoted, and which instructs the jury in substance that in determining the market value of the crop destroyed, they should find the difference between the value of the crops which plaintiff "would" or "could" have produced, had he not been deprived of irrigating water by defendant, and the value of what he actually did produce, deducting therefrom the additional necessary cost of producing, harvesting and marketing the full crop, and taking into consideration the testimony of the market value of like crops during the season of 1918.

The value of a growing crop consists of more than the mere sprouts or blades from the seed sown, which often would be worth little even for feed. Such a crop has a potential value, a value as a growing crop, which, under reasonable cultivation, will generally be brought to maturity by the forces of nature. In case that such a crop is destroyed

by another, wholly or in part, it would be unjust to ignore these elements of value. Still that value must be fixed as of the time of the injury, and the value at maturity cannot serve as the standard. There may arise many contingencies under which the crop would not come to maturity. Hail, excessive rains, drouth or other forces of nature might interfere whereby it might be totally or partially destroyed. A person buying a crop for instance in the month of June would take into consideration these various elements, as well as the cost and expenses necessary in order to ultimately get the crop to market. The method, however, of proving the market value of the crop at the time of the destruction, or the difference in the value before and after the injury, in case of partial destruction, is not always easy. In the case of Colorado Cons. L. & W. Co. v. Hartman, 5 Colo. App. 150, 38 Pac. 62, it was fixed by witnesses in a direct manner, and, as there said, if the witnesses are competent, it would seem that that is the easiest and best method. But it probably could not often be determined in that way, nor would a market value at the time and place of injury always exist. Hence courts allow evidence as to what kind of crops the land in question will ordinarily produce, as to what may·be the state of growth of the crop when destroyed or injured, the average yield per acre of similar land in the neighborhood, the probability of maturing the crop in question, the market value of the crop injured and the market value of the probable crop without the injury at the time of maturity, the reasonable cost and expenses that would have been incurred, after the injury, in fitting for and hauling the crop to market, and other evidence from which the jury will be allowed to determine what the actual market value of the crop destroyed, or the difference in value before and after the injury, actually is. (Teller v. Dredging Co., 151 Cal. 209, 90 Pac. 942, 12 L. R. A. (N. S.) 267. Int. Agric. Corp. v. Abercrombie, (Ala.) 63 So. 549, 49 L. R. A. (N. S.) 415; Missouri Pac. Ry. Co. v. Sayers, 82 Kans. 123, 107

Pac. 641, 27 L. R. A. (N. S.) 168; U. S. Smelting Co. v. Sisam, 191 Fed. 293, 112 C. C. A. 37, 37 L. R. A. 976; Smith v. Hicks, 14 N. Mex. 560, 98 Pac. 138, 19 L. R. A. (N. S.) 938; Ft. Worth etc. Ry. Co. v. Speer (Tex. Civ. App.) 212 S. W. 762; Colo. Con. L. & W. Co. v. Hartman, supra; Roberts v. Lehl, 27 Colo. App. 351, 149 Pac. 851; Hoover v. Scott (Colo.) 189 Pac. 848; Naylor v. Floor, 51 Utah 382, 176 Pac. 971.)

In the case of Roberts v. Lehl, supra, the court, speaking of one method of arriving at the damages, said in part:

"If the crop has no market value at the time and place of the loss, and there is reasonable certainty that it would have matured if the breach of the lease had not occurred, the jury should be told to ascertain what such crop, considering its condition immediately before the destruction, would ordinarily have brought on the market, with ordinary care in maturing, harvesting and marketing, considering the average yield of such crops, in the same season and locality, on similar land, under similar circumstances, and then to deduct from such market value what the ordinary and prudent expense would be to mature, harvest and market such crop, and that such difference would be the value of the crop destroyed, or the damage sustained."

In the case of Candler v. Ditch Co., 28 Nev. 150, 80 Pac. 751, 6 Ann. Cas. 946, the court said:

"From an examination of many authorities we are convinced that a just and reasonable rule for the measure of damages for the loss of growing crops in cases like the one now before this court, where it appears that the crops have been entirely destroyed, or nearly so, and where there appears to be a reasonable certainty that they would have matured but for the wrongful act of the defendant, would be to allow the plaintiffs the probable yield of the crops under proper cultivation, the value of the yield when matured and ready for market, and deducting therefrom the estimated expense of producing, harvesting, and market-

ing them, and also deducting the value of any portion of the crops that may have been saved.''

In the case of Naylor v. Floor, supra, the court approved of the following instruction as substantially correct:

''The measure of damage is the difference between the market value of the crop before the alleged damage was done and the market value of the crop after the alleged damage was done. This may be calculated by finding the market value the entire crop would have at maturity if no injury thereto had been done, and deducting therefrom the entire market value of the crop at maturity in its alleged injured state. The difference, if any, will enable you to calculate the amount of damage. From this amount so found, if you so find, you must deduct its proportion of the cost of harvesting, marketing, and bringing the crop to maturity.''

One of the important facts which accordingly should be made to appear is that the crop would have been reasonably certain of maturity if it had not been injured or destroyed. That being shown, we see no reason why the maturity value, together with the other elements above mentioned, should not be considered in fixing, according to the method pointed out, the amount of damages. We do not here determine the sole measure of damages that should govern in such cases, but simply whether the instruction given in this case by the lower court is substantially correct. Tested by the rules here mentioned, while the word ''could'' in speaking of the amount of the crop to be raised is not to be commended, we think that on the whole the jury were not misled as to the method of determining the damages, and we think that no prejudice occurred by reason of the instruction given, especially in view of the fact that no claim is made that the verdict is excessive, and because, further, there appears to be ample evidence in the record to sustain the amount of damages, and ample facts are shown from which to determine the market value, costs of production, marketing and harvesting the crops, and the probability of maturing them.

9. Several assignments of error are not argued a great deal; for instance that in relation to the testimony of the plaintiff as to the statements of the foreman of defendants. No ruling was insisted on and none made by the court, nor were any exceptions reserved. Again, counsel say that the gravel was taken from the land belonging to the State. We cannot see that this makes any difference. Possession by plaintiff of his ditch was sufficient, as against the defendants, to entitle him to have the banks thereof unmolested. (38 Cyc. 1017.) Counsel also say that there is no evidence that plaintiff had water available for irrigation. But we fail to discover any grounds for this claim, since plaintiff, at least, testified that he would have been able to have irrigated his lands and that he would have had at least ten days irrigation during high water but for the trespass of defendants. We fail to see why the availability of water should have been pleaded herein. These assignments of error are accordingly not well taken.

We have carefully examined the record in this case, and have fully considered all of the assignments of error and the arguments relating thereto. We find no reversible error, and the judgment of the lower court should accordingly be and the same is hereby affirmed.

*Affirmed.*

POTTER, C. J., and KIMBALL, J., concur.