Carl A. THAYER and Carrie G. Thayer, Appellants (Plaintiffs below),

v.

Raymond SMITH d/b/a Casper Trailer Sales, Appellee (Defendant below).
No. 2952.

Supreme Court of Wyoming.
Dec. 29, 1960.

Winter, Burgess & Forrister, Robert A. Burgess, Casper, for appellants.

Mahoney, Murphy & Emery, J. F. Mahoney, Casper, for appellee.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Justice PARKER delivered the opinion of the court.

This is a suit by Carl A. and Carrie G. Thayer, husband and wife, against Raymond Smith for damages [1] said to be caused by defendant's failure to issue a bill of sale for a trailer house sold by him to plaintiffs and their consequent inability to move and utilize it. Defendant filed a general denial and alleged as an affirmative defense that plaintiffs' cause of action constituted an agreement in violation of the laws of the State of Wyoming.

According to plaintiffs' version of the transaction, they were interested in the purchase of a trailer house and about May 24, 1958, inspected a Geer model, quoted at $7,475, in defendant's stock, offered him in a trade therefor their used trailer and $4,500 in cash which amount was to include sales tax. Smith refused this offer but later, on May 29, stopped at plaintiffs' Glenrock place, and as Thayer put it, said "he would deal my way." Thayer said he would talk the matter over with his wife who was not then present. Later, Mrs. Thayer called defendant's place of business, verified with the person answering the phone that the $4,500 and the old trailer house would cover the new one, including sales tax, and requested delivery. On June 3, Goodman, an employee of defendant, delivered the trailer, said that he understood the $4,500 included the sales tax, took Mrs. Thayer's check bearing the notation, "For 1958 Geer 46'–10' wide trailer house including sales tax of $149.-50." Plaintiffs gave Goodman the title to their old trailer, and he said that they would receive title to the new one in about ten days. When the title was not sent and plaintiffs could not secure a license and move the trailer to Thayer's new place of work, he contacted defendant both by phone and letter. Smith then advised them that the $4,500 check did not cover sales tax which was $132, not $149.50, and that they would receive no title until they paid the tax.

According to defendant's version of the transaction, Smith had no recollection of having seen the Thayers on the trailer lot, but a memorandum was left on his desk that they wished to deal for a trailer. He went to Glenrock, talked to Thayer, offered to trade for $4,700 or $4,800, but Thayer was not interested. When Thayer did not come in during the next three or four days, Smith stopped to see him in Glenrock, and the two discussed a difference of $4,500 which Thayer did not accept, and Smith went on to Denver. While he was there his office called about the deal; Smith instructed Goodman to make delivery of the new trailer house and bring title for the old one, saying he would take care of financial details when he arrived back in Casper. Smith said that Goodman was a mere delivery boy with no authority to

1. One thousand dollars actual plus accruing damages to the time of the issuance of a bill of sale; five thousand dollars punitive; and attorney's fees.

make contracts. He denied that there was ever any conversation with Thayer about the sales tax or that it was to be included in the purchase price. About June 4 defendant returned to his place of business, found plaintiffs' check, wrote on it "Sales tax not included. R. E.," and cashed it. Later, at a time which he did not specify, defendant made up a statement of the transaction showing:

"Bona Fide Cash Selling Price $6600.00—Tax
$132.00      $6732.00

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"Cash Down Payment --------------------------------$4500.00
"Trade-in: \* \* \*                                          $2100.00  \*  \*  \*"

The Thayers, however, were not sent a copy of this statement. Goodman said that when he delivered the trailer house Mrs. Thayer asked him if the $4,500 included the sales tax and he answered that he did not believe so but that she could talk to Smith when he got back from Denver.

The court entered judgment denying the complaint and assessing costs against plaintiffs, reciting as findings of fact the purchase of the trailer house and the details of the check given therefor. As conclusions of law the court found that the equitable title to the trailer house was in plaintiffs, that the legal title was in defendant, and that defendant by Wyoming law had a right to withhold title to the trailer house until the sales tax had been paid. Plaintiffs have appealed, contending that the findings, conclusions, and judgment of the court are unsupported in law, that the cashing of the check under the circumstances shown in the record was an accord and satisfaction, and that the title was improperly withheld. Defendant responds that any such agreement as contended for by the plaintiffs would be unlawful and contrary to public policy.

▉ Defendant further insists that the question of accord and satisfaction was not previously raised and thus is improperly presented here. It seems to us that this question is the important issue in the controversy. Plaintiffs' principal contention is that defendant's cashing of the $4,500 check which showed on its face that it covered sales tax—despite Smith's notation to the contrary—was an accord and satisfaction; and we must first determine whether such point is properly argued here. The words "accord and satisfaction" are not mentioned in the complaint, the pretrial order, or the judgment. However, the plaintiffs here stated in open court that this matter was the principal subject of the briefs in the trial court, and defendant made no denial. Moreover, it seems reasonable that this issue was raised in the trial court because the complaint did allege that the $4,500 included sales tax, which allegation was denied. The pretrial order recited the check situation and stated plaintiffs' insistence that the sales tax was included in the $4,500 check. The court, as findings of fact, listed the receipt by the defendant of the check with plaintiffs' notation "For 1958 Geer 46'–10' wide trailer house including sales tax of $149.50," defendant's placing on the bottom of said check the words, "Sales tax not included. R. E.," and the depositing of the check without notifying plaintiffs. Under these circumstances, the question of whether or not the cashing of the check constituted an accord and satisfaction was properly before the court for determination and must accordingly be considered here.

The general rule is well stated in 1 Am. Jur. (1936) Accord and Satisfaction § 24, wherein it is said:

"The creditor to whom a check is sent or other remittance made as payment in full has the option either of accepting it on the conditions on which it is sent, or of rejecting it. When a

claim is in dispute, and the debtor sends to his creditor a check or other remittance which he clearly states is in full payment of the claim, and the creditor accepts the remittance or collects the check without objection, it is generally recognized that this constitutes a good accord and satisfaction. The moment the creditor indorses and collects the check, with knowledge that it was offered only upon condition, he thereby agrees to the condition and is estopped from denying such agreement. It is then that the minds of the parties meet and the contract of accord and satisfaction becomes complete. * * "

And see 1 C.J.S. (1936) Accord and Satisfaction § 34; Annotations, 34 A.L.R. 1035, 75 A.L.R. 905, 80 A.L.R. 1056.

6 Williston, Contracts (1938) §§ 1854 and 1855, contains a good discussion of the subject. The author says that the great and increasing weight of authority in the United States is that the use of a check by the creditor with the knowledge that it was given as payment in full is an assent to the condition. He states further that if the parties are dealing orally with one another and the debtor offers the creditor in full satisfaction a check, which the creditor takes, it must be inferred that he agrees to the terms. We have noted with particular interest the following decisions in which the creditor had erased or altered the notation on the check that it was to be accepted in full payment and thereafter cashed it. In each instance the court held the actions of the creditor to have constituted an accord and satisfaction. Melnick v. National Air Lines, 189 Pa.Super. 316, 150 A.2d 566; Hutchinson v. Culbertson, 161 Pa.Super. 519, 55 A.2d 567; Hull v. Johnson, 22 R.I. 66, 46 A. 182; Armour & Company v. Schlacter, Co.Ct., 159 N.Y.S.2d 135; John J. Daly Iron, Steel & Metal Co. v. United States Metal & Mfg. Co., 76 Misc. 574, 137 N.Y.S. 150; Deuches v. Grand Rapids Brass Co., 240 Mich. 266, 215 N.W. 392; Whitlock v. Veith, La.App., 83 So.2d 148.

On the subject generally the statement of Judge Cardozo in Hudson v. Yonkers Fruit Co., 258 N.Y. 168, 179 N.E. 373, 374, 80 A.L.R. 1052, is significant:

"Two forms of accord and satisfaction of unliquidated claims are to be discovered in the books. One is where there is a true assent to the acceptance of a payment in compromise of a dispute, or in extinguishment of a liability uncertain in amount. * * * The other is where the tender of the payment has been coupled with a condition whereby the use of the money will be wrongful if the condition is ignored. Protest will then be unavailing if the money is retained. What is said is overridden by what is done, and assent is imputed as an inference of law. * * * "

The dealings of the parties prior to the delivery had been entirely oral. The record shows (a) Smith said the sales tax was not mentioned; (b) Thayer said it was to be included in the $4,500 according to their discussions, both with Smith and Goodman—the Thayers' check was so written; (c) Goodman said Mrs. Thayer asked him if the $4,500 check included the sales tax and he answered that he did not believe so but that she could talk to Smith when he returned. The check was the first written memorandum of the conditions of the sale, Smith having admitted that some time following his cashing of the check he drew the statement of the transaction which for the first time brought out, at least in any coherent manner, the retail price, the value of the trade-in, and the sales tax. The result is not altered by application of the rule that an appellate court must assume the evidence in favor of the successful party to be true, leave out of consideration the evidence of the unsuccessful party in conflict therewith, and give the evidence of the successful party every favorable inference which may reasonably be drawn from it. Jacoby v. Town of City of Gillette, 62 Wyo. 487, 174 P.2d 505, 177 P.2d 204, 169 A.L.R. 502.

Relying solely upon defendant's testimony, we find that nothing was said about sales tax in the primary negotiations but that Mrs. Thayer before the time she wrote the check queried Goodman as to the sales tax being included in the $4,500 and he responded that he did not believe so. These facts fail to show that the amount claimed by the defendant was liquidated at the time the check was cashed.

" * * * The term 'liquidated,' when used in connection with the subject of accord and satisfaction, has reference to a claim which a debtor does not dispute. * * *" American Ins. Union v. Wilson, 172 Ark. 841, 291 S.W. 417, 418.

And see Schnell v. Perlmon, 238 N.Y. 362, 144 N.E. 641, 34 A.L.R. 1023.

■ Defendant argues that any accord and satisfaction which resulted from the negotiations of the parties grew out of a contract which was illegal or contrary to public policy and cites § 39–295, W.S.1957, as the statute which would have been violated:

"Assumption or refund of tax by retailer prohibited.—It shall be unlawful and a misdemeanor for any retailer to advertise or hold out, or state to the public, or to any consumer, directly or indirectly, that the tax or any part thereof imposed by this act [§§ 39–286 to 39–308] will be assumed or absorbed by the retailer, or that it will not be considered as an element in the price to the consumer, or if added, that it, or any part thereof, will be refunded."

We find nothing in the wording of the statute which indicates that it is improper for a retailer to quote an over-all price. We should perhaps note that there is a variance between the caption and the body of the statute, the caption, which is an editorial addition, saying that an assumption or refund of the tax by the retailer is prohibited, but the statute itself as passed by the legislature saying that the advertising or holding out of the assumption or refund is unlawful. Although the wording of the statute would undoubtedly control, there is no occasion to determine this point since the total amount collectible by Smith was unliquidated and the evidence shows no violation of either the caption or the statute.

Acceptance of the check by the defendant under the circumstances disclosed by the record was an accord and satisfaction. The defendant was, therefore, obligated to issue the title for the trailer house immediately and would be liable for the reasonable damages which were occasioned by his failure so to do; but, of course, plaintiffs could not recover for any losses they might have prevented by reasonable effort on their part. Bader v. Mills & Baker Co., 28 Wyo. 191, 201 P. 1012.

Viewing the case as we do, we find it unnecessary to discuss other points raised by counsel in the briefs and argument. The judgment of the trial court must be reversed and the cause remanded with instructions to grant a new trial.

Reversed and remanded.