FOURNET, Justice.
 

 Plaintiff, Louis J. Rossignol, as master of the community, joined by his wife, instituted this suit to cancel a contract entered into between, his wife, acting for the community, arid Frank G. Giarratano, owner, through the agency of Morgan and Jacobs, Incorporated, real estate broker, for the purchase of property located at 2285 Bayou Road, in the city of New Orleans, and to have returned to him the deposit of $540 made with the defendant broker.
 

 Defendant company, without prejudice to its rights, placed the $540 deposit in the registry of the Civil District Court aAd then, joining with the defendant owner, filed an answer substantially denying the claim of plaintiff and reconvening for specific performance of the contract, or, in the alternative, seeking forfeiture of the deposit, with reasonable attorney fees.
 

 After a trial on the merits, the lower court rendered judgment in favor of the plaintiff and the defendants have appealed. Plaintiff answered the appeal, asking that the judgment be amended so as to award him interest at five' per cent annum from the date defendants filed their answer, January 18, 1938.
 

 Plaintiff and his wife operated a cleaning and pressing business in a portion of the building at 1206 North Tonti street and occupied- the remaining portion as a residence. This place proving to be inadequate, plaintiff’s wife, in whose name title to the property was vested and the
 
 *465
 
 business was conducted, contacted the defendant broker with a view of purchasing the property at 2285 Bayou Road which it was advertising for sale, and as a result thereof, S. L. Jacobs, president of Morgan and Jacobs, Incorporated, called at plaintiff’s residence and after some discussion plaintiff’s wife signed an offer to purchase the property, plaintiff signing as a witness, “ * * * for the sum of Fifty Four Hundred Dollars ($5400) Dollars on
 

 or more
 

 terms of One Thousand Dollars/Cash balance of Forty four hundred Dollars through
 

 plan
 

 Homestead/.” The contract also contained the stipulation that if the contract was accepted the purchaser would deposit the sum of $540, which would be returned in the event a permit could not be secured for the operation of a cleaning and pressing business at 2285 Bayou Road. The owner, Frank G. Giarratano, accepted the offer on the same day. Two days later, on July 30, plaintiff’s wife made a deposit of $540 on account, in accordance with the provisions of the contract, for which she was given a receipt bearing the same date as the offer, July 28, 1937.
 

 The record further shows that Mr. Jacobs immediately sought to make a loan with the Suburban Building and Loan Association on the property in the amount of $4,400, which was refused. He then applied to the Jackson Homestead, which also refused his application, but later offered to loan the sum of $2,500 or as much as $3,-000, provided certain repairs were made. The property was appraised by the Central Appraisal Bureau and valued at approximately $4,000. On September 26, 1937, on the application of the brokerage agent, a temporary certificate in the name of L. J. Rossignol was issued for the occupancy and operation of a cleaning and pressing business on the property for a period of six months. Subsequently, on October 8, 1937, plaintiff, through his attorney, notified the defendants of his intention to cancel the agreement to purchase the property and demanded a return of the .$540 deposit made with Morgan and Jacobs, Incorporated.
 

 It is plaintiff’s contention (1) that the contract was conditioned upon the obtaining of a $4,400 loan from the homestead, and (2) upon the further suspensive condition that plaintiff would be able to operate his cleaning and pressing plant on the property under a permit to be obtained from the city, neither of which conditions were fulfilled.
 

 On the other hand it is defendants’ contention that the contract waá substantially complied with in that a certificate for the occupancy and operation of a cleaning and pressing business at 2285 Bayou Road for a period of six months was obtained, and that on December 27, 1937, the owner offered to execute a deed whereby plaintiff would assume the outstanding mortgage in favor of the Jackson Homestead on the property, the owner taking a second mortgage for the balance due him, and, accordingly, on December 29, 1937, made a tender before Robert L. Hickerson, notary public.
 

 The pertinent part of the contract, which is quoted hereinabove, was in the handwrit
 
 *467
 
 ing of S. L. Jacobs. By interlineation the words “or more”’ were added between the words “Dollars” and “Cash,” while the word “plan” was added after the word “Homestead.” Plaintiff claims that these interlineations were not a part of the offer to buy when executed by his wife, whereas Mr. Jacobs stated that same were added after the writing of the offer to buy but prior to the execution of same. The owner testified that he did not remember whether the words “or more” had been interlined or not, but that the word “plan” was a part of the contract when he accepted it.
 

 We do not attach much significance to these interlineations because it is evident from the record that plaintiff offered to purchase the property for the sum of $5,-400, $1,000 o.f which was to be the down payment. The addition of the words “or more” would not be definite enough to require a down payment of more than $1,000, and it is clear that the balance of $4,400 had to be handled through a homestead. Nor is it necessary to decide whether or not the tender made by the owner was a compliance within the-contemplation of the parties, for the offer was made under the express condition “ * * * that a permit can be obtained for a Cleaning business * * *,” and under the further condition that “ * * * if permit is not obtained this agreement to be cancelled & deposit returned.” It is obvious that plaintiff’s intention was to move his family and business from the Tonti street property into the Bayou Road property and the record shows that in order to make said property suitable for that purpose it would require material alterations of the building, as well as the construction of additional buildings on the premises in which to place high pressure steam boilers. While the record does show that Jacobs obtained a permit to conduct a cleaning and pressing business at 2285 Bayou Road, it also appears that the chief building and zoning clerk of the city of New Orleans, in charge of the issuance of certificates for the occupancy of new buildings or for the occupancy of an existing building under alteration, testified that had he been apprised of the fact that building alterations were necessary for the operation of this cleaning and pressing business, or that outbuildings had to be erected for the accommodation of high pressure steam boilers, he could not, under any circumstances, have issued the permit, for the reason that the city zoning and building ordinances prohibit the issuance of such a permit. The pertinent part of the ordinance provides that
 
 “The lawful use of a building existing at the time of the passage of the Ordinance may be continued
 
 except as hereinafter provided in paragraphs (c) and (d), although such use does not conform to the provisions thereof,
 
 provided that the use shall not be expanded nor shall any structural
 
 alterations' except those required by law or Ordinance be made therein.” (Italics ours.) See the case of State ex rel. Hochfelder v. City of New Orleans, 171 La. 1053, 132 So. 786.
 

 We therefore conclude that the judgment of the trial judge, ordering the cancellation of the contract and the return of the deposit, is correct.
 

 
 *469
 
 The defendant Morgan and Jacobs, Incorporated, because of the provision in the contract that the “ * * * commission is earned on the signing of this agreement and shall not be affected by any subsequent agreement of the parties hereto, or by annulment of this contract by any court,” claims that plaintiff is liable for the payment of the agent’s commission. In the case of Boisseau v. Vallon & Jordano, 174 La. 492, 141 So. 38, where we had a similar provision in a contract under consideration, we held the principal was not liable for the payment of the agent’s commission. Furthermore, in the instant case, the owner agreed to pay his broker a commission of $400, which agreement was executed in a separate document forming no part of the contract entered-into between the plaintiff and the owner, and, under those conditions, we know of no principle of law that would render plaintiff liable.
 

 Plaintiff, in answer to this appeal, contends that the trial judge failed to grant interest at the rate of five per cent from the date defendants filed their answer, January 18, 1938. Under the provisions of Article 1938 of the Revised Civil Code, “All debts shall bear interest at the rate of five percentum per annum from the time they became due, unless otherwise stipulated.” In the instant case the plaintiff, on October 8, 1937, after ascertaining that it was impossible to obtain a permit, cancelled his agreement to purchase the property and demanded return of the $540 deposit, from which date interest should be due. However plaintiff only asks for interest from the day defendants replied to this suit, January 18, 1938.
 

 For the reasons assigned it is adjudged, ordered, and decreed that the judgment below be amended so as to grant five per cent per annum interest on the principal amount of the judgment rendered from January 18, 1938 until paid, and that as thus amended it is affirmed, at defendants’ costs.