W. Sidney STURGEON, Jr., Appellant (Defendant below),

v.

Fred W. PHIFER, Appellee (Plaintiff below).

No. 3192.

Supreme Court of Wyoming.
April 1, 1964.

George J. Millett, of Pence & Millett, Laramie, Wyo., for appellant.

Fred W. Phifer, Wheatland, Wyo., for appellee.

Before PARKER, C. J., and HARNS-BERGER, GRAY, and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

This was an action filed in the District Court of Albany County, by Fred W. Phifer as plaintiff against W. Sidney Sturgeon, Jr., as defendant, to recover damages of $1,281.66 for an alleged breach of an oral agreement concerning the pasturing of

defendant's sheep by plaintiff. The case was tried to the court without a jury and judgment was given plaintiff for the full amount asked. The defendant-Sturgeon has appealed.

The parties agree there was an oral agreement for defendant to pasture 1,538 sheep with plaintiff, on plaintiff's Konold Ranch, during the 1962 summer season. Payment was to be at the rate of 50 cents per head per month. The sheep were to remain until September 20, 1962. It is admitted, however, the sheep were moved from the Konold Ranch August 1, 1962. The judgment entered was for the entire grazing fee, at the stipulated rate, from August 1 to September 20.

The question presented on appeal is whether the defendant so breached his contract that plaintiff is entitled to recover damages therefor. If so, a further question is raised as to whether the damages were properly assessed.

It is undisputed that the pasturing of Sturgeon's sheep was normal and as mutually agreed between the parties until July 28, 1962. At that time Sturgeon moved his sheep onto a portion of the ranch known as the Laramie Plains and discovered sheep owned by Dan McGuire on a part of the Laramie Plains pasture. It was admitted by Phifer and by his foreman and by McGuire that Sturgeon had first priority to the grass over McGuire, because Sturgeon had pastured with Phifer during the previous season and McGuire had not.

According to Sturgeon, he had expected the McGuire sheep to be out of that portion of the range, and he became irate because they were not. That evening he drove to Wheatland to talk to Phifer. He did talk to him on the telephone and was told to see Phifer's foreman.

Apparently Sturgeon insisted that Phifer come up to the range the next morning. The evidence is in conflict as to whether Phifer did or did not agree to do so. Sturgeon claims such a promise was made, but he also admitted Phifer told him he was going on vacation. In any event Phifer did not go up, and Sturgeon did not see Phifer's foreman about having McGuire immediately moved.

It is not claimed that Sturgeon did anything more to resolve the problem concerning the McGuire sheep. Instead, he contacted Tom Sturgeon on July 30 and made arrangements for range from him, at the rate of 30 cents per head per month. The next day he moved his sheep off plaintiff's land.

## The Contract

Concerning the contract, Sturgeon as appellant contends two things: (1) Plaintiff failed to prove he was able to perform by failing to show there would have been sufficient feed and water for defendant's sheep from August 1 to September 20; and (2) plaintiff violated the agreement to put defendant in exclusive possession of the Laramie Plains pasture.

The testimony of the plaintiff and of his foreman and of McGuire touched upon the sufficiency of feed and water. Also, Sturgeon himself admitted there was feed and water enough for one band of sheep, and it is agreed by all concerned that his band had first priority.

No doubt the trial court considered the contention concerning Phifer's inability to perform an afterthought on the part of Sturgeon, and not the real reason for his repudiation of the contract. There is a complete absence of any evidence showing that defendant complained about being short of feed or water on plaintiff's ranch, prior to the time Sturgeon got angry about the McGuire sheep, or prior to the finding of cheaper pasture.

At any rate, defendant-Sturgeon seems to be under a misapprehension as to the burden of proof when he asserts "plaintiff failed to prove" he was able to perform the contract, by failing to show there would have been sufficient feed and water for defendant's sheep. The correct rule as we understand it is that the burden of proof as to an alleged valid excuse for nonperformance of a contract is upon the party

raising the issue as an affirmative defense. Pacific Trading Co., Inc. v. Mouton Rice Milling Co., 8 Cir., 184 F.2d 141, 147; Cox v. First Provident Corporation, 240 S.C. 130, 125 S.E.2d 1, 3; Sale v. State Highway and Public Works Commission, 242 N.C. 612, 89 S.E.2d 290, 298.

Indeed, it can be said with authority, where the defendant has by his act prevented performance by the plaintiff, it is not necessary for the plaintiff to allege and prove his own readiness and ability to perform. Long Investment Co. v. O'Donnel, 3 Wis.2d 291, 88 N.W.2d 674, 678; Mankofsky-Goldstein Shoe Co. v. J. W. Carter Co., Mo.App., 33 S.W.2d 1049, 1050. See also 17A C.J.S. Contracts § 590b(4), p. 1147.

The excuse asserted by Sturgeon for nonperformance, in his answer to plaintiff's complaint, was that there would not have been sufficient feed and water for defendant's sheep from August 1 to September 20. We think, on the record made, the court was justified in finding that Sturgeon failed to sustain the burden of proof on this issue, and the burden was his.

With respect to defendant's claim that plaintiff failed to put Sturgeon in exclusive possession of the Laramie Plains pasture, Phifer argues such an obligation was not a part of the contract between the parties; and that the question of exclusiveness was raised for the first time in the appeal. It was not alleged in the pleadings.

Apparently, the claim of an exclusive right is based on testimony of Sturgeon at the trial. He said plaintiff's foreman, during a conversation about in June, promised him exclusive use of the Laramie Plains pasture. That would have been subsequent to the original contract and while defendant's sheep were being pastured.

This testimony, it is suggested, was not contradicted. It is true no witness expressly denied that plaintiff's foreman made such a promise, but the court was nevertheless justified in concluding from other evidence that the agreement was for Sturgeon

to have a priority on the range, over McGuire, and not an exclusive right. Plaintiff himself testified the agreement was for defendant to have such a priority. This was corroborated by Phifer's foreman and by McGuire.

Additionally, it is quite clear from the evidence that Sturgeon knew about the McGuire sheep being on the Laramie Plains pasture. He had seen McGuire at Shamrock Station and told McGuire he planned to move out on the Plains. Then on July 26 Sturgeon went to Wheatland and told Phifer he wanted to move onto the Plains. The next day he told Phifer's foreman the same thing. Sturgeon then moved onto the Laramie Plains and found McGuire's sheep right where he was going to camp. Of this situation he testified: "And I thought they were going to be out of there."

There is nothing to indicate that Sturgeon ever protested against the McGuire sheep being on the Plains pasture. His only protest was that they were not out of there when he moved in. These are the undisputed facts in the case which tended to show Sturgeon understood he had only a priority right and not an exclusive right on the Laramie Plains pasture.

The evidence therefore, bearing upon the question as to whether Sturgeon's right on the Plains pasture was an exclusive one or a priority only, was for the trier of facts and the matter appears to have been resolved in plaintiff's favor.

### Determination of Damages

Appellant's contentions relative to the assessment of damages are (1) plaintiff failed to prove that he made a reasonable effort to mitigate damages; and (2) plaintiff failed to prove damages.

Quite recently, in Asbell Bros., Inc. v. Nash-Davis Machinery Company, Wyo., 382 P.2d 57, 59, we gave recognition to the principle that one who is injured by the wrongful act of another must exercise reasonable care and diligence to avoid loss or minimize the resulting damage. However, in that case we said the question as to

whether a plaintiff has exercised such care is clearly one of fact for the trier of fact.

And in Truck Terminal, Inc. v. Nielsen, 80 Wyo. 223, 339 P.2d 413, 419; and Bader v. Mills & Baker Co., 28 Wyo. 191, 201 P. 1012, 1014, our court followed the rule that the party who commits a wrong has the burden of proof in establishing matters asserted by him in mitigation or in reduction of damages. See also Annotation 134 A.L.R. 242, 243.

In the case before us plaintiff admitted his damages could have been mitigated if he found other sheep or other livestock to use the grass, but he testified "I was unable to find any other stock to mitigate damages in this case." On the other hand, there is an absence of any evidence tending to show that he could have mitigated the damages or reduced his loss.

On the basis of such a record, we cannot find fault with the trial court's refusal to reduce plaintiff's claim on the theory that his damages could have been mitigated.

As to whether plaintiff failed to prove damages, it was sufficiently proved that defendant breached his contract and plaintiff had not been paid the stipulated grazing fee for the period from August 1 to September 20. No argument is made against this, but defendant-Sturgeon suggests again that Phifer failed to prove he had unconsumed grass at the end of the grazing season. Even if he did have unconsumed grass, counsel suggests, he should have proved that the grass could not be used and was not beneficial the following year.

Not only were these matters too speculative and conjectural to constitute a basis for reducing damages, but as we have already indicated the burden was on defendant to establish them. The trial court evidently thought he did not do so.

We find no reversible error indicated in any of appellant's contentions, and the decision of the district court should be upheld.

Affirmed.