Vernon A. O'BRIEN, Appellant
(Plaintiff below),

v.

Cecil L. HUNT, also known as Cecil L.
(George) Hunt, and F. Ann Hunt,
Appellees (Defendants below).

No. 3760.

Supreme Court of Wyoming.

Jan. 28, 1970.

Roncalio, Graves & Smyth and John R. Smyth, Cheyenne, for appellant.

D. N. Sherard, Wheatland, P. J. Heaton, Sidney, Neb., for appellees.

Before GRAY, C. J., and McINTYRE, PARKER and McEWAN, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Vernon A. O'Brien sued the Hunts for the return of $15,000, which he had paid on a July 1967 sales contract for the sellers' interest in a Concession Lease Agreement between the Parks Commission of Wyoming and George Hunt, together with a cafe building, motel, trailer park, boats, and other equipment used by the Hunts in the operation of the Glendo Marina. Plaintiff brought his action in three counts, alleging that (a) there was failure of a condition precedent, that is, of securing the State's consent to the assignment of the concession; (b) the contract had been induced by fraud; and (c) the forfeiture provision was unconscionable.[1]

---

1. Paragraph eleven of the sales contract concerned default provisions and provided, " * * * in the event that the purchaser fails to make payment * * * when the same is due or otherwise fails to keep and perform the covenants and conditions on his part to be kept, the sellers shall have the right to notify the purchaser of the alleged default in writing specifying the particulars of the default * * *. If the purchaser, with-in sixty days after the date of the mailing of such notice, fails to correct the default, then the sellers shall have the right to declare this contract terminated and ended, shall have the right to keep all moneys paid to date of termination as rent for use and liquidated damages and not as a forfeiture and the sellers shall be entitled to the immediate possession of the property herein."

Defendants answered, asserting among other things that plaintiff had not requested the State's approval of the assignment but instead had, after taking possession of the Glendo Marina and the purchased equipment, operated the concession some six weeks during July, August, and early September, when he had ceased operation, and that he had thereafter appeared before the Wyoming Recreation Commission (formerly the Parks Commission), urging that body to disapprove the assignment.

When the case was tried, the defendant at the conclusion of plaintiff's evidence moved for a judgment and the request was granted, resulting in this appeal. The evidence developed at the trial disclosed that the property at the marina together with the sellers' interest in the concession was sold by defendants to plaintiff for $55,000, payable $15,000 before possession, with the balance in 240 equal monthly amortized payments. Mr. O'Brien paid the $15,000, entered into possession on July 18, and operated the business during the remainder of July, through August (making one payment for that month), and for four days in September, at which time he "turned it back." According to Mr. O'Brien around August 20 "I could see that I wasn't making any money and I told Mr. Hunt this added with also other problems and I—without saying how many problems I had I offered to turn it back to him for ten thousand and him keep the other five thousand and he wasn't interested." He did not at any time ask the Wyoming Recreation Commission for consent or approval of the assignment, but subsequent to the time he "turned it back," he and his attorney appeared before the commission, and both asked it not to approve the assignment of the concession. They first appeared before the commission alone, but that body postponed the matter until Mr. Hunt could also be present.

According to a letter from the director of the commission, the minutes of the meeting stated:

" 'Mr. Richard Smyth, attorney for Mr. Vernon O'Brien, was introduced. Mr. Smyth related the circumstances of the problem between Mr. O'Brien and Mr. Hunt and asked that the Commission not grant the Assignment of Lease from Mr. Hunt assigning the concession to Mr. O'Brien. No action was taken until Mr. Hunt's attorney could be heard.' "

After reciting that Mr. Hunt and his attorney appeared, the minutes continued:

" '* * * It was regularly moved by Mrs. Robert Frisby, seconded by Mr. Marvin Harshman that the Attorney General's opinion be accepted on the controversy between Mr. Hunt and Mr. O'Brien. Motion carried unanimously.

" 'The Attorney General's opinion is as follows: "Because the Wyoming Recreation Commission technically is only involved with Mr. Hunt due to his concession lease, the Commission expects Mr. Hunt to operate the Glendo concession in compliance with this lease. If the concession is not operated in compliance with this lease, the terms of this lease will be deemed violated and the lease cancelled.

" ' "The Wyoming Recreation Commission is not in a position to approve or disapprove a contract in which the Commission had not consented to be a party, had no knowledge of, and which is being disputed even before being submitted to the Commission. Such a contract is of no concern of the Commission and must stand on its own merits between the two contracting parties.

" ' "Without a valid undisputed contract for assignment, this Commission has nothing to make a decision on." ' "

The core of the appeal is the question presented by plaintiff's first point, Should the court require a seller to return all of the moneys paid by the purchaser because a condition precedent in the contract was

not fulfilled? The mentioned condition precedent was:

"CONDITION PRECEDENT TO LIABILITY. In the event that the State of Wyoming, for any reason, refuses to permit the purchaser to operate the premises under the terms of this agreement or refuses to accept the purchaser as an assignee of the said Concession Lease Agreement, then this agreement shall be null, void and of no further effect, the sellers shall re-pay [sic] purchasers all moneys paid to date of the refusal and the purchaser shall return unto the sellers all of the property herein or its equivalent."

In his argument here, plaintiff emphasizes the words "for any reason" and insists a meeting of a condition precedent is an absolute prerequisite to defendants' retaining the down payment. As a basis for that argument, he quotes 6 Corbin, Contracts, § 1368, p. 521 (1962):

"In cases like these, the plaintiff [seller] can not get specific performance and has no remedy in damages. He loses, without recourse, the benefits and profits of the bargain; but he has a right to the restoration of whatever the defendant may have received from him under the contract. * * * If the defendant has received land or some special type of goods, the plaintiff may have a right of specific restitution. * * *"

To a similar effect he cites Rossignol v. Morgan & Jacobs, Inc., 191 La. 462, 185 So. 883; Ramey v. Gent, 103 Colo. 423, 86 P.2d 1083. He fails, however, to address himself to circumstances existing in the present case, i. e., his appearance with counsel before the commission and the request it not grant the assignment of the concession when prior thereto he had told Mr. Hunt he was not going to make any more payments and had turned back the business to him.

In Thatcher v. Darr, 27 Wyo. 452, 199 P. 938, 947, 16 A.L.R. 1442, this court said that he who himself prevents the happening of performance of a condition precedent upon which his liability by the terms of a contract is made to depend cannot avail himself of his own wrong and relieve himself from his responsibility to the obligee and shall not avail himself, to avoid his liability, of a nonperformance of such condition precedent, which he has himself occasioned against the consent of the obligee.[2] It would be difficult to imagine a situation where the evidence would more positively require the application of this rule than the one presented in the instant litigation. Accordingly, plaintiff is in no position to escape liability from the failure of performance.

As a further ground of reversal, plaintiff contends that a court of equity will not allow plaintiff to forfeit 25 percent of the total price and that defendants have been unjustly enriched. However, his authorities in this aspect are inapposite, pertaining entirely to enforcement of, rather than relief from, claimed forfeiture and hence totally lack cogency. He also suggests that defendants' acceptance of the property when possession was returned to them may even constitute a rescission of the whole contract, but his suggestion seems to be nothing more than speculation, unsubstantiated even by argument. From a review of the record, we are convinced that the trial court was justified in granting the motion to dismiss since plaintiff had not shown himself entitled to demand the relief claimed.

Affirmed.

McINTYRE, Justice (dissenting).

There can be no dispute of the proposition that he who prevents the happening

---

2. We later discussed the problem in Gibson v. J. T. Allen Agency, Wyo., 407 P. 2d 708, 709–710, and Sturgeon v. Phifer, Wyo., 390 P.2d 727, 729–730.

or performance of a condition precedent in a contract cannot avail himself of his own wrong. That is not to say, however, that O'Brien or his attorney did in fact prevent the happening of the condition precedent which in this case is all important. Or at least, it is not to say defendant-Hunts met their burden of proof in that regard.

The rule as to burden of proof, which we followed in Sturgeon v. Phifer, Wyo., 390 P.2d 727, 729–730; which was followed in the cases cited therein; and which has been followed in the great majority of other decisions, places the burden on Hunts to prove that O'Brien prevented the condition precedent from happening. Indeed, no other view as to burden of proof would be logical.

In *Sturgeon* we said the burden of proof as to an alleged valid excuse for nonperformance of a contract is upon the party raising the issue as an affirmative defense. The contract we are dealing with clearly and unequivocally states such contract shall become void and the sellers shall "repay purchasers all monies," in the event the State, *for any reason,* refuses to accept the purchaser as an assignee.

When O'Brien showed that the refusal did in fact take place, he made a *prima facie* case for repayment of his money. The sellers and not O'Brien are asserting the affirmative defense that O'Brien prevented the condition precedent (approval by the State) from taking place. Thus, there can be no question but that the sellers had the burden to prove O'Brien prevented the condition precedent from happening.

Let us then look at the status of proof in connection with the affirmative defense asserted by the Hunts. It should be pointed out that in truth and in fact this offense was affirmatively alleged in the answer of defendants. It was relied on at the trial and was accepted by the trial court.

As to whether defendants have proved their affirmative defense, we should notice to begin with that parties contemplated when their contract was entered into the definite possibility that approval would not be forthcoming. Hence, the condition-precedent paragraph was included. It contains a clear and concise statement of the condition precedent.

If the lack of approval was a definite possibility at the time the contract was drafted, then what took place between the date of the contract and the meeting of the State Board which would make approval more certain? We surely must agree nothing transpired to make approval certain.

Indeed, much took place to make the withholding of approval more likely than it would have been at the time the contract was entered into. I refer to the unsuccessful management on the part of O'Brien. This was a calculated risk and gamble which the Hunts took when they allowed O'Brien to succeed or fail as an operator, before having the approval of the State.

The attorney general's opinion and the minutes of the commission clearly show the position taken was that Hunts should have obtained approval of the board before consummating a deal with an assignee or purchaser. In view of the failure of the Hunts to do so, it seems clear the board, on advice from the attorney general, took the position that a contract already consummated was of no concern to the board and would not be approved retroactively.

It seems apparent to me that Hunts have failed to prove by anything other than guesswork and speculation that the condition precedent would have occurred or happened or would have been fulfilled, *except for* the conduct of O'Brien and his attorney. In this connection, I insist that the demonstrated inability of O'Brien to successfully operate the concession was a factor separate and apart from the statement made by his attorney. It is indeed

a strong indication that the commission might not have approved the assignment even if the attorney's statement had not been made.

There seems to be no contradiction of the proposition that an affirmative defense cannot be sustained on evidence which is wholly speculative and conjectural.

In Wright v. Conway (on petition for rehearing), 34 Wyo. 42, 242 P. 1107, 1110–1111, Chief Justice Potter expressed these views: Guesswork cannot be substituted for evidence or inference; and an inference cannot be based upon a mere possibility or probability; it can only be based upon a fact proved, or something known to be true. In more recent times we have had occasion to say no inference can be based on mere surmise, guess, speculation or probability. Tower v. Horn, Wyo., 400 P.2d 146, 147. Also, conjecture, speculation as to happenings, or the suggestion of a possibility cannot be made to take the place of substantial evidence. Edwards v. Harris, Wyo., 397 P.2d 87, 91; Caillier v. City of Newcastle, Wyo., 423 P.2d 653, 656.

The condition-precedent paragraph of the sales contract states, in the event the State, *for any reason,* refuses to permit the purchaser to operate the premises, then the purchaser shall be entitled to a refund. It would be pure guesswork to say the Recreation Commission refused to permit O'Brien to become an assignee of the Hunts because O'Brien's attorney asked them to. Even more, it would be pure guesswork to say that was the only reason for the commission's action.

The concession lease being sold by the Hunts to O'Brien contained the following restriction:

"10. The lessee will not sublet any portion of the premises for any purpose except by written permission of the Commission."

It would seem the attorney general took the position that unless the lessees first obtained the written permission of the commission, pursuant to paragraph 10 of its lease, the putting of someone else in possession as a sublessee was an act which the commission could not afterwards approve or disapprove. In other words, the parties had contracted without permission or approval; and as far as the commission was concerned they could stand where they were.

In any event, regardless of whether the attorney general was right or wrong with respect to the legal effect of paragraph 10 of the concession lease, it is entirely clear the commission's action was not based *solely and exclusively* on the fact that O'Brien's attorney had asked it not to approve the assignment. We cannot be sure whether the action resulted *partly* from the suggestion of O'Brien's attorney that the assignment not be granted.

*Default Provision*

The sales contract we are dealing with provides, if the purchaser after notice of default shall fail to correct any default within 60 days, then the sellers shall have the right to declare the contract terminated and the right to keep all moneys paid. The Hunts claim the right under this provision to retain all the money which O'Brien had paid.

Of course, if the condition-precedent paragraph of the contract is found to be applicable on account of the State's refusal to permit O'Brien to operate the concession, then the default provision relied on by the Hunts would not apply on account of the contract having become null and void as provided for in the condition-precedent paragraph.

In any event, attention is directed to our holdings in Cook v. Moyle, Wyo., 359 P.2d 58, 61. There we followed Baker v. Jones, 69 Wyo. 314, 240 P.2d 1165, and took the position that a seller cannot legally declare a forfeiture of a contract for the sale of land after his own default without first giving notice of seller's intention to declare such a forfeiture, and additional-

ly giving reasonable time within which to perform and make payment. We expressly stated that notice and time for performance must come after seller has corrected his own default.

Before the sellers in this case can claim the benefit of the default provision they seek to rely on, the trier would need to be satisfied that such sellers were first in a position to transfer title to O'Brien.

I do not say the trial court should have required the sellers to return "all" of the moneys paid by O'Brien because the condition precedent in the contract was not fulfilled. I do say it is my opinion that the court should have balanced the equities and done equity under all the circumstances to the parties on both sides. This it did not do.