**Gary GOODWIN and Joan Goodwin, Appellants (Defendants),**

v.

**The UPPER CRUST OF WYOMING, INC., a Wyoming corporation, and David Miller, Appellees (Plaintiffs).**

**The UPPER CRUST OF WYOMING, INC., a Wyoming corporation, and David Miller, Appellants (Plaintiffs),**

v.

**Gary GOODWIN and Joan Goodwin, Appellees (Defendants).**

**Nos. 5392, 5393.**

Supreme Court of Wyoming.

March 5, 1981.

Ernest W. Halle, Cheyenne, signed the brief and appeared in oral argument on behalf of appellants in No. 5392 and appellees in No. 5393.

Richard A. Hennig and C. M. Aron, Laramie, signed the brief on behalf of appellees in No. 5392 and appellants in No. 5393. Hennig appeared in oral argument.

Before ROSE, C. J., and McCLINTOCK, RAPER, THOMAS and ROONEY, JJ.

RAPER, Justice.

This appeal arises from an August 20, 1980, judgment which found that Gary and Joan Goodwin (appellants) had breached a sublease agreement by vacating the leased premises prior to the agreement's expiration and awarded Upper Crust of Wyoming, Inc. and David Miller (appellees) $18,000 in damages and $27.40 in costs. All parties have appealed, and the following issues have been raised:

"1. Whether or not there was a valid sublease between the Appellees and the Appellants because of the failure of the owner of the premises to timely give its approval thereof.

"2. Whether or not, assuming a valid sublease between the parties, there was a constructive eviction because of the failure of the Appellees to obtain timely approval of the sub-lease thereby requiring the Appellants to remain in possession at their peril.

"3. Whether or not, assuming a valid sub-lease between the parties, the Appellees had a duty to mitigate damages after the Appellant[s] vacated the premises.

"4. Whether or not, assuming no valid sub-lease existed between the parties, the Appellants were in possession of the premises on a month to month tenancy or tenancy by sufferance.

"5. Assuming a valid lease between the parties, what is the measure of damages?

"6. Whether or not Appellees were entitled to prejudgment interest.

"7. Whether or not Appellees were entitled to recover their attorney's fees."

We will reverse and remand only for the inclusion of prejudgment interest in the award of damages.

The Mini Dome Mall, a partnership, on January 1, 1977 leased to Harry Taylor, Don Taylor, Frank Taylor, and Frank Lombardi space in the Mini Dome Mall complex located in Laramie. This lease contained a covenant prohibiting any underletting without the consent of the lessors.

On December 9, 1977, lessees entered into a sublease agreement with appellees. In the body of the sublease it was stated that the agreement was "subject to the approval of the Mini Dome Mall." A handwritten note was appended at the end of the agreement. It provided that the agreement was "expressly contingent upon the acceptance by the Mini Dome Mall" of structural changes in the premises. Further, "[i]f the Mini Dome Mall partnership does not approve of said structural changes by _____ [the date was left blank] then this sub-lease shall be null & void." Mini Dome Mall's approval was forthcoming on January 9, 1978.

On August 1, 1978, appellees then in turn entered into a sublease agreement with appellants for a term of one year. The agreement contained a stipulation that it was subject to the approval of Mini Dome Mall. Appellants had occupied the premises for over two months when they gave notice that they were rescinding the lease offer and would vacate the premises by Novem-

ber 1, 1978. After they had left as noticed, Mini Dome Mall approved the sublease on November 15, 1978.

Written demands for delinquent rental payments were made by appellees on December 4, 1978, and February 13, 1979. Appellants refused to make the payments claiming that the Mini Dome Mall's approval of the agreement was a condition precedent to its enforceability. Since their rescission of the agreement occurred before Mini Dome Mall's approval, appellants asserted they were under no obligation to further perform.

This action was then commenced by appellees on July 31, 1979, seeking all unpaid rentals due under the lease agreement. The case was submitted to the district court judge on stipulations in May of 1980. Judgment was rendered generally for the plaintiffs on August 20, 1980.

The first issue we must address concerns the effect to be given the "subject to" language which appeared in the sublease entered into by the parties. Specifically, we must determine what is the legal effect of the provision making the sublease "subject to the approval of Mini Dome Mall."

■ Appellants concede that the general rule is that a sublessee cannot assert as a defense in an action based upon the sublease the fact that the sublease violates a covenant against underletting in the original lease. However, they argue that the rule is different when the sublease itself specifically provides that it is subject to the original lessor's approval, as it did here. In such circumstances, appellants contend that the required approval operates as a condition precedent, i. e. the contract is executory and nonbinding until the original lessor's approval is actually forthcoming.

■ Wyoming does not have any case law squarely on point. However, the rule is firmly established, here, that a contract, free from ambiguity on its face, can be interpreted as a matter of law. It is only when doubt arises from the contract itself as to what the parties meant that there exists a question of intent which the trier of fact must resolve. *Madison v. Marlatt*, Wyo.1980, 619 P.2d 708, 714.

Here the sublease provision may be read two ways. It states:

"AND WHEREAS, the parties hereto desire that Lessees sub-lease and Lessors lease said business, subject to the approval of the Mini Dome Mall and subject to the terms and conditions of said lease agreement and sub-lease agreement, except as modified by this agreement."

It is reasonable to interpret this language as creating either (1) a condition precedent —i.e. Mini Dome Mall's approval had to occur before performance was due under the lease—or, (2) a condition subsequent— i.e. Mini Dome Mall's rejection of the sublease would have relieved the parties of any of their obligations still remaining due under the agreement. *Johnston v. Landucci*, 1942, 21 Cal.2d 63, 130 P.2d 405, 408, 148 A.L.R. 1355.

■ Whether a provision of a contract or deed is "[a] condition precedent or subsequent is not a question of phrase or form but of the intention of the parties." *Atlantic Pacific Oil Co. of Montana v. Gas Development Co.*, 1937, 105 Mont. 1, 69 P.2d 750, 755. As indicated earlier, questions of intent must be resolved by the trier of fact. On appeal we must accept the trier's findings of fact as long as there exists a rational basis in the evidence for the conclusion. *Fortin v. State*, Wyo.1981, 622 P.2d 418. Here the trial judge found generally for the appellees. Of necessity that means he found the sublease provision was a condition subsequent. We cannot conclude that the evidence of the parties' conduct does not support the district judge's determination that the parties intended the "subject to" clause to be a condition subsequent. Therefore, we must uphold his decision that a valid sublease existed between the parties which could only have been legitimately terminated by Mini Dome Mall, the owner of the premises.

■ Next, appellant claims that even if the sublease was binding, there was a constructive eviction because of the failure of

the appellees to obtain Mini Dome Mall's approval of the agreement within a reasonable time. When presented with a constructive eviction claim, the following passage from *Seaboard Realty Co. v. Fuller*, 1900, 33 Misc. 109, 67 N.Y.S. 146, 147 was quoted approvingly in *Mileski v. Kerby*, 1941, 57 Wyo. 109, 113 P.2d 950, 953:

" 'To constitute a constructive eviction, there must be an intentional and injurious interference by the landlord, which deprives a tenant of the beneficial enjoyment of the demised premises, or materially impairs such beneficial enjoyment. An eviction depends upon the materiality of the deprivation. If trifling, and producing no substantial discomfort or serious inconvenience, it will be disregarded, and will not afford cause for the termination of the relation of landlord and tenant. * * *' "

The court in *Mileski*, supra, also noted:

"In *Meeker v. Spalsbury*, 66 N.J.L. [60] 63, 48 A. [1026] 1027, in a careful opinion by Justice Collins, quoting from other authorities therein cited, it is said:

" 'That eviction must be "not a mere trespass, but something of a grave and permanent character done by the landlord with the intention of depriving the tenant of the enjoyment of the demised premises", and * * * more fully and accurately defined as, "an act of a permanent character done by the landlord in order to deprive, and which had the effect of depriving, the tenant of the use of the thing demised, or of a part of it." ' "

In *Scott v. Prazma*, Wyo.1976, 555 P.2d 571, 86 A.L.R.3d 338, this court again considered the doctrine of constructive eviction. There it acknowledged that:

"Constructive eviction involves the surrender of possession by the lessee on justifiable grounds rather than a deprivation of actual occupancy by direct action of the landlord. Grounds must amount to a substantial interference with possession or enjoyment. * * *" 555 P.2d at 579.

It also elaborated upon the notion of "intentional interference":

"There is some language in *Mileski v. Kerby*, supra, indicating that there must be an intent on the part of the landlord to deprive the tenant of the enjoyment and use of the premises before there can be a constructive eviction. That does not mean there must be an actual subjective intention in the mind of the landlord. It may be inferred from the character of the lessor's acts if their natural and probable consequences are such as to deprive the lessee of the use and enjoyment of the leased premises. Where the acts of the lessor effectively deprive the lessee of the premises, the intent to evict is implied from the character of the acts done. * * * "

The district court judge in finding generally for the appellees presumably must have concluded that the failure of Mini Dome Mall to approve the sublease did not effectively deprive the sublessee of the use of the premises. Based on the record, we cannot conclude that such a finding was irrational; therefore, we will uphold the district court on this issue.

Appellants next assert that if a valid sublease existed between the parties, then appellees had a duty to mitigate their damages when appellants vacated the premises. Appellees have obliquely, at least for the purposes of this case, admitted the validity of this proposition, but have contended that appellants failed to establish that there was not an attempt to mitigate. To support their position, appellees cited *Sturgeon v. Phifer*, Wyo.1964, 390 P.2d 727, where this court acknowledged:

" ' * * * [I]n *Truck Terminal, Inc. v. Nielsen*, 80 Wyo. 223, 339 P.2d 413, 419; and *Bader v. Mills & Baker Co.*, 28 Wyo. 191, 201 P. 1012, 1014, our court followed the rule that the party who commits a wrong has the burden of proof in establishing matters asserted by him in mitigation or in reduction of damages. * * *" 390 P.2d at 731.

In turn, appellants concede that the burden of proof was theirs—that they were required to demonstrate that the appellees had failed to mitigate. Appellants' brief states:

"* * * The Appellants have carried their burden of proof in as much as the stipulation and exhibits in the record clearly show that when the Appellees received notice of the intent to vacate from the Appellant[s], the Appellees did nothing except, on two separate occasions, demand payment and compliance from the Appellants. It is basic that Appellees should not be allowed to observe a breach and then simply fold their arms and do nothing. The Appellees had a duty to minimize the loss. This they failed to do."

In order to meet this burden of proof, more must be done than to say that the other side failed to show any attempt to mitigate. Some evidence must actually be produced that the claimant did not try to mitigate. This can even be demonstrated circumstantially, by showing that he could have mitigated quite easily if only he had tried. But no evidence along those lines was before the district court. Therefore, the appellants did not meet their admitted burden, and thus the district court of necessity had to rule against them. See *Tench v. Weaver*, Wyo.1962, 374 P.2d 27.

We do not by this opinion foreclose at some more appropriate time in the future considering the proposition that there may be an exception to the rule of *Sturgeon v. Phifer*, supra. As pointed out in the brief of appellees in their citation of Annot., "Landlord's Duty, on Tenant's Failure to Occupy, or Abandonment of, Premises, To Mitigate Damages by Accepting or Procuring Another Tenant," 21 A.L.R.3d 534, § 12, pp. 577–579, there is a split of authority on the issue as to which party, lessor or lessee, has the burden of proof. The case before us is not in a posture to decide whether an exception exists in this jurisdiction. The stipulation of the parties was framed in such a fashion that neither the trial court or this court could or can consider the existence of an exception to the general rule set out in *Sturgeon v. Phifer*, supra. There are no facts in the stipulation of what, if any, efforts to mitigate by either side were made nor is the subject of mitigation even there mentioned. We have accepted the theory of appellants here only because that is the way it was presented to the district court and, even if it were the law, appellants cannot prevail.

Appellants' fourth issue was premised upon the assumption that the sublease was invalid; and, therefore, we need not consider it.

■ Their fifth contention is that the district court employed the wrong measure of damages when it awarded appellees $18,000—an amount equivalent to the unpaid $2,000 rental payments due for each of the last nine months of the lease. Appellants argue that the appellees were damaged only to the extent that the appellees were exposed to liability under their own sublease agreement with the original lessees—Harry Taylor, Don Taylor, Frank Taylor, and Frank Lombardi. Since appellees had settled their own liability, which was a direct result of appellants vacating the premises, at $14,500, appellants claim that their liability should have only been for that amount. However, appellants' argument ignores the fact that:

"The measure of damages for breach of contract is that which would place plaintiff in the same position as he would have been had the contract been performed, less proper deductions. In other words, it is that which will compensate him for the loss which full performance would have prevented or breach of it entailed. * * * " *Reynolds v. Tice*, Wyo.1979, 595 P.2d 1318, 1323.

The district court's award attempted to place appellees in the same position they would have been in if appellants had performed under the contract. Presumably some of the rentals from appellants would have gone to appellees' landlords, but some would surely have been profit. The measure of damages proposed by appellants fails to take that into consideration. We hold the district court's award was based upon the appropriate measure of damages.

■ The sixth issue presented in this appeal is actually raised by appellees in their cross-appeal. They assign error to the dis-

trict court's failure to grant them prejudgment interest from the due date—here November 1, 1978, for the first $2,000 and the first day of each of the following nine months for each of the subsequent $2,000 rental payments. Appellants conceded that appellees were entitled to prejudgment interest in their brief in Case No. 5393. However, they do dispute from what point in time the interest should be computed. It is their position that appellees were entitled to no interest prior to the time that the debtor received notice of the amount due— here December 4, 1978. Both parties recognize that *Northern Gas Co. v. Town of Sinclair*, Wyo.1979, 592 P.2d 1138, and *Rissler & McMurry Co. v. Atlantic Richfield Co.*, Wyo.1977, 559 P.2d 25, are controlling.

In *Rissler* it was said:

"This court has spoken frequently about the prerequisites to recovery of prejudgment interest and holds with the majority of courts that interest is recoverable on liquidated but not on unliquidated claims and that a claim is considered liquidated when it is readily computable by simple mathematical computation. * * *

\* \* \* \* \* \*

"A word of caution is added. The debtor must receive notice of the amount due before interest starts to run. A defendant cannot be in default if he is not informed of what to pay. There must be a fixed and determined amount which could have been tendered and interest thereby stopped. [Citation.] If the amount of the indebtedness or the amount owing can be calculated and determined from statements rendered and found to be correct, it is a matter of mere calculation. [Citation.]" 559 P.2d at 31, 34.

The court in *Northern Gas*, supra, elaborated on this theme further:

"* * * The real question is whether Northern Gas Company should be excused by the indication in *Rissler & McMurry Company v. Atlantic Richfield Co.*, supra, that notice of the amount due must be furnished before the interest will

start to run. The record is clear that the information with respect to the natural gas sales always was available to Northern Gas Company. Northern Gas Company informed the Town of Sinclair of the amount of gross revenue at the time that it paid the franchise fee provided for in Section 6 of Ordinance No. 112. As between the two parties, Northern Gas Company had the information needed to compute the franchise fee, and the Town of Sinclair had to obtain the information from Northern Gas Company even for purposes of this litigation. * * *" 592 P.2d at 1143.

From the language in these two cases, it is clear that notice was not necessary to start the interest running in this case. Appellants knew that if they paid the rent due under the sublease agreement that interest would thereby be stopped. They did not need notice from appellees informing them of the amount due.

■ Appellees were entitled to the use of the money they were to receive under the agreement from the date it became due. The use of money has real economic value, particularly in the current economy of inflation and high interest rates of which we take judicial notice. Appellees were deprived of that benefit. Prejudgment interest should have been awarded as an attempt to compensate for that loss. Since the amount due under the contract was at all times readily computable, appellants should be charged with the statutory rate of interest on all the unpaid rents from the date each became due. We must remand to the district court to modify its judgment accordingly.

■ But before we close this opinion, we must resolve the final issue presented: whether appellees were entitled to recover their attorney's fees. "[A]ttorney's fees are not recoverable unless there is specific statutory authority therefor, or unless such are provided for by contract." *Kvenild v. Taylor*, Wyo.1979, 594 P.2d 972, 977. Attorney's fees were provided for in the original lease of the premises involved in this case,

between Mini Dome Mall and the Taylors and Lombardi. Appellees argue that since by the fourth unnumbered paragraph of their agreement with appellants, this sublease was made subject to the terms and conditions of the original lease of the premises, attorney's fees were authorized by the sublease.

As discussed earlier in this opinion, the meaning of the language "subject to" is open to interpretation. Where a contractual provision is ambiguous, it will be read in accord with the intentions of the parties; but it is left to the trier of fact to ascertain that intention. Here the district court judge, who was the trier of fact in this case, ruled that no attorney's fees would be allowed. Presumably this was based upon the conclusion that the parties' sublease agreement was not intended to provide for attorney's fees. We do not find such a conclusion irrational in light of the dearth of evidence presented in this case. As a result we uphold the district court judge's ruling disallowing attorney's fees.

Affirmed but modified as to prejudgment interest and remanded for computation and entry of an amended judgment for appellees accordingly.